EDWARD H. KUBO, JR.  #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

CHRIS A. THOMAS      #3514
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:     Chris.Thomas@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00495 DAE |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S MEMORANDUM |
| | ) | IN OPPOSITION TO DEFENDANT'S |
| vs. | ) | NOTICE OF APPEAL OF THE ORAL |
| | ) | ORDER REVOKING PRETRIAL |
| PHILLIP NASH, | ) | RELEASE OF DEFENDANT PHILLIP |
| Defendant. | ) | NASH |
| _____ | ) | |

GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S NOTICE OF APPEAL OF THE ORAL ORDER
<u>REVOKING PRETRIAL RELEASE OF DEFENDANT PHILLIP NASH</u>

      Comes now the United States of America, by and through its attorney, Chris A. Thomas, Assistant U.S. Attorney, and hereby submits its Memorandum in Opposition to Defendant's Notice of Appeal of the Oral Order Revoking Pretrial Release of Defendant Phillip Nash.

**I.   STATEMENT OF FACTS**

    **A.   Procedural History.**

On October 8, 2003, Defendant Philip Nash (hereinafter "Defendant") was indicted, with 10 other defendants.  Defendant was charged with Conspiracy to possess with intent to distribute 50 grams or more of methamphetamine; possession with intent to distribute 50 grams of more of methamphetamine; and use of a telephone to facilitate the commission of a conspiracy to possess with intent to distribute methamphetamine.

Defendant was arrested on October 17, 2003 pursuant to an arrest warrant.  On November 18, 2003, Defendant was detained on the basis that he posed a flight risk and a danger to the community.

On April 26, 2004, Defendant appeared before U.S. Magistrate Judge Kevin Chang and plead guilty to Conspiracy to possess with intent to distribute 50 grams or more of methamphetamine.

On July 8, 2004, Defendant was released on a $50,000 bond secured by $5,000 in cash.  On August 22, 2005, Defendant's pretrial release was revoked for failing to submit to random drug testing six times within a 3 month period.  As a result of that revocation, the $5,000 in cash that was posted to secure Defendant's initial release was forfeited.

In an effort to allow Defendant to attempt to cooperate with the government, a Motion for Reconsideration of Defendant's Detention was supported by the government and the Defendant was released on February 20, 2007. In order to ensure compliance with his pretrial conditions, Defendant posted a bond in the amount of $50,000, secured by a $20,000 security mortgage on property owned by the parents of Defendant.

The Defendant was arrested on March 12, 2008, based on a positive finding of cocaine in a urinalysis that was conducted on March 3, 2008 by Hina Mauka. A hearing on an Order to Show Cause Why Pretrial Release Should Not Be Revoked was held on April 10, 2008. The Court found that Defendant was in violation of his pretrial release order and that there was no condition of combination of conditions that would assure he would pose a danger to the safety of the community and Defendant was therefore remanded to the custody of the U.S. Marshal Service.

Defendant is now awaiting sentencing. The Presentence Investigation Report for Defendant indicates that, pursuant to the U.S. Sentencing Guidelines calculations, Defendant has a total offense level of 34 and a criminal history category of VI. Defendant's guideline range for imprisonment is 262 to 327 months.

## II. STANDARD GOVERNING APPEAL OF PRETRIAL RELEASE REVOCATION

   A.   **Burden of Proof**.

Pursuant to Title 18 U.S.C. § 3148(b) the burden of persuasion at a hearing for revocation of pretrial release is on the Government but it is not the same as in the original trial on the criminal offense which produced the sentence of probation. The judicial officer must be reasonably satisfied by clear and convincing evidence that the person has violated any condition of release and finds that there is no condition of combination of conditions that will assure that the person will not flee or pose a danger to the safety of the community. See Title 18 U.S.C. §§ 3148(b)(1)(B) and 3148(b)(2)(A).

United States v. Koenig, 912 F.2d 1190, 1191 (9th Cir. 1990) held that in reviewing a magistrate's order denying pretrial release from detention, the district court is to make its own "de novo" determination of facts, whether different from or adoption of findings of the magistrate and that the ultimate determination of propriety of detention is also to be decided without deference to magistrate's ultimate conclusion.

In defining "de novo review" within the context of a magistrate's detention order, the Court stated in Koenig that the district court is not required to start over in every case and proceed as if the magistrate's decision findings did not exist. The district court should review the evidence before the magistrate and make its own independent determination whether the

magistrate's findings are correct, with no deference.  <u>Id</u>. at 1193.

**B.     Evidence**.

Since a hearing on the violation of a pretrial release condition "is not a formal trial; the usual rules of evidence need not be applied" See Fed. R. Crim. P. 32.1(a) advisory committee note. According to the Supreme Court in Morrissey v. Brewer, 408 U.S. 471 480 (1972), "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial". In fact, Rule 1101(d)(3) of the Federal Rules of Evidence specifically provides that the Rules of Evidence do not apply in proceedings to revoke probation.

### III. ARGUMENT

A.  There was Clear and Convincing Evidence to Satisfy the Court that Defendant Violated the Conditions of His Pretrial Release.

At the hearing on March 10, 2008, the Government presented testimony from Rubie Intong, the collector of the urine specimen from Defendant. Mr. Intong was very forthright about the collection procedures that occurred on March 3, 2008. Mr. Intong was shown a list by Defendant's counsel which was a list of suggested procedures sent by U.S. Pretrial services to their vendor - Hina Mauka, who is Mr. Intong employer. Mr. Intong received ongoing training in urinalysis collection procedures and had performed these procedures and had 12 months of experience. Although Mr. Intong had not previously seen the copy of the list

attached as Exhibit "1" to Defendant's appeal, it was very apparent from his testimony that all critical measures to ensure the integrity of the urine specimen given by Defendant were followed.  Defendant specifies in his appeal that there were 5 instances from the UA collection list in which Mr. Intong did not follow exactly.  However, as the Magistrate Judge found, not exactly following those procedures did not impact on the integrity of the sample given by the Defendant. Mr. Intong testified both on his direct examination and on rebuttal that both he and Defendant maintained visual contact at all times with the specimen until the bottle was screwed on and label placed over the top and the collector placing the bottle in pouch and sealing it.

The fact, as Defendant argues, that Mr. Intong did not check the toilet after the specimen was provided, or that he and not Defendant placed the sticker on the bottle after a preliminary positive finding, or that he and not Defendant placed the specimen in the pouch has absolutely no impact whatsoever on the integrity of the sample given by Defendant.  The main purpose of the UA Collection list was complied with.  The integrity of the specimen was maintained.

Defendant did not establish by any evidence whatsoever that the UA collection list, attached as Exhibit "1", was a "protocol" or that it was mandated to be followed, or that there

was any invalidation if any procedure was not strictly adhered to.

Mr. Intong testified that he was 100% confident that the urine specimen given by Defendant was the same urine specimen that was placed in the pouch with the chain of custody form and mailed to Kroll Laboratory.  Mr. Intong also testified that Defendant's urine specimen was collected in a cup that was previously sealed and that Defendant's urine specimen was the only specimen that he was handling at that time and that there were no other specimen throughout the entire process that could have been switched or mistaken for Defendant's.

**IV. CONCLUSION**

Based on the foregoing, it is the Government's position that Defendant's pretrial release was properly revoked.

DATED: April 17, 2008, at Honolulu, Hawaii.

Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By /s/ Chris A. Thomas
    CHRIS A. THOMAS
    Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was duly served upon the following persons by hand or mail on April 17, 2008, as set forth below:

> STUART N. FUJIOKA, Esq.
> 1188 Bishop Street, Suite 1006
> Honolulu, Hawaii 96813
> Ph: (808) 544-0068
>
> Counsel for Defendant
> PHILLIP NASH
>
> **U.S. PRETRIAL SERVICE**
> 300 Ala Moana Blvd., Rm. C-126
> P.O. Box 50111
> Honolulu, Hawaii 96850
> Attn: DAVID KAHUNAHANA

DATED:   April 17, 2008, at Honolulu, Hawaii.

/s/ Chris A. Thomas
CHRIS A. THOMAS